**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINIQUE NELSON, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>REDDIT, INC., a Delaware corporation<br><br>Defendant. | Case No. 3:25-cv-01470-JLS-AHG<br><br>[Removed from the Superior Court of the State of California for the County of San Diego, Case No. 25CU022609C]<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT REDDIT, INC'S MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>DATE: October 30, 2025<br>TIME: 1:30 p.m.<br>CTRM: 4D<br>JUDGE: Hon. Janis L. Sammartino<br><br>Complaint Filed: April 30, 2025<br>Action Removed: June 6, 2025 |

# TABLE OF CONTENTS

**Page**


**I. INTRODUCTION** ........ 1

**II. LEGAL STANDARD** ........ 4

**III. ARGUMENT** ........ 4

A. **Defendant's LiveRamp Trackers Are "Pen Registers" Under CIPA** ........ 4

B. **Plaintiff Does Not Have To Allege A Communication With "Content" To State A Claim Under § 638.51** ........ 7

C. **The "Third Party Exception" Applies To Wiretapping Claims Under § 631(a) And Does Not Apply To Pen Register Act Claims** ... 9

D. **The Pen Register Act Unequivocally Covers The Conduct At Issue** ........ 10

**IV. CONCLUSION** ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Augustine v. Great Wolf Resorts, Inc.*,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. Jul. 18, 2024)....................8

*Barber v. Thomas*,
560 U.S. 474 (2010)....................16

*Cahill v. Liberty Mut. Ins. Co.*,
80 F.3d 336 (9th Cir. 1996)....................4

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)....................10

*Conohan v. Rad Power Bikes Inc.*,
No, CV 25-0106 PVC, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025).............. 5, 15

*Flanagan v. Flanagan*,
27 Cal.4th 766 (2002)....................14

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. Jul. 14, 2025)..........5, 10, 16

*Gonzales v. Uber Techs. Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)....................8

*Greenley v. Kochava, Inc.,*
684 F. Supp. 3d 1024 (S.D. Cal. 2023).................... 3, 4, 6

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)....................12

*Heiting v. FKA Distributing Co.*,
No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594
(S.D. Cal. Feb. 3, 2025)....................*passim*

*In re Google Inc.*,
No. 13-MD-02430, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................14

*In re Zynga Litig.*,
750 F.3d 1098 (9th Cir. 2014).................... 5, 12

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .................................. 14

*Lesh v. CNN, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......................................................... 5, 8, 13

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ......................... 14

*In re Meta Pixel Tax Filing Cases*,
No. 22-cv-07557-PCP, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ................... 15

*Mirmalek v. Los Angeles Time Communications LLC*,
No. 24-cv-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ *passim*

*Moody v. C2 Educational Systems Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ......................................................... 10, 16

*Muscarello v. United States*,
524 U.S. 125 (1998) ........................................................................................ 16

*People v. Superior Ct. of Riverside Cnty.*,
81 Cal. App. 5th 851 (2022) ........................................................................ 3, 16

*Riganian v. LiveRamp Holdings, Inc.*
2025 WL 2021802 (N.D. Cal. Jul. 18, 2025) ............................................... *passim*

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ...................................................... 5, 10, 16

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ................. 4

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017) .................................................................... 16

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) .................................................. 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........................................................ *passim*

*S. Bell Tel. & Tel. Co. v. Hamm*,
409 S.E.2d 775 (S.C. 1991) ............................................................................. 10

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ............................................................................... 9

*Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996) .......... 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 7

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB. 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ..5, 10, 16

**STATUTES**

Cal. Penal Code § 630 .......... 1, 14

Cal. Penal Code § 631 .......... *passim*

Cal. Penal Code § 638.50 .......... *passim*

Cal. Penal Code § 638.51 .......... *passim*

Cal. Civ. Code § 1798.175 .......... 15

## I. INTRODUCTION

The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630 *et seq*. (the "CIPA"), to safeguard the privacy rights of its citizens. In doing so, the Legislature explicitly acknowledged that "the development of new devices and techniques for the purpose of eavesdropping upon private communications . . . has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Consistent with this purpose, CIPA prohibits any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a) (the "Pen Register Act" or the "Act"). Defendant's conduct falls squarely within the type of privacy invasion the statute was designed to prevent.

Defendant Reddit, Inc. ("Defendant" or "Reddit") owns and operates the website, Reddit.com (the "Website"), a popular social media platform. (Class Action Complaint or "Compl.," Dkt. 1-1, ¶ 1.) As part of an unlawful effort to monetize the sensitive information of its users, Defendant integrated code into its Website developed by LiveRamp (the "LiveRamp Tracker"). (Compl., ¶ 33.) As such, when Defendant's Website visitors accessed Reddit.com from their computers, the LiveRamp Tracker was installed on their browsers and utilized to capture their IP addresses without their consent or court order. (*Id*. at ¶¶ 33, 34, 36.) Defendant's actions of covertly capturing the IP addresses from Plaintiff and the Class members is done for the purpose of executing targeted advertising and to enhance its own revenue. (*Id*. at ¶¶ 35, 38.)

Plaintiff Dominique Nelson was one such Website visitor who accessed Reddit.com from his desktop browser and as a result Defendant installed the LiveRamp Tracker on his browser to capture his IP address without his consent or court order. (Compl., ¶ 39, 40, 43, 44.) Accordingly, Plaintiff and the members of the Class who similarly accessed Defendant's Website had their privacy invaded by Defendant's

violations of the Pen Register Act, which prohibits the unauthorized installation and use of "pen registers."

Rather than respect its Website visitors' privacy rights, Defendant prioritized its own financial gain, violating the Act in the process. Now, instead of accepting responsibility for its illicit conduct and making amends with the Class, Defendant attempts to circumvent liability by advancing several meritless arguments which have already been rejected by the Southern District of California and other district courts within the Ninth Circuit.

First, Defendant argues that Plaintiff has not alleged conduct analogous to that of a "pen register." (Motion to Dismiss or "MTD," Dkt. 15, at 2.) However, the Northern District of California recently reviewed the very same technology employed by Defendant in *Riganian v. LiveRamp Holdings, Inc.* and determined that the LiveRamp Tracker utilized by Defendant is a pen register within the meaning of the Pen Register Act. No. 25-cv-00824-JST, 2025 WL 2021802, at *11-12 (N.D. Cal. Jul. 18, 2025).

Defendant's second argument, that Plaintiff fails to allege a communication with "content," similarly fails as it aims to inappropriately conflate separate provisions of CIPA. There is no requirement that Plaintiff must interact with substantive content to assert claims under the Pen Register Act.

Third, Defendant argues that it is immune from liability under the Act because it is an intended recipient of Plaintiff's communications with its Website. (MTD at 2.) Defendant's argument is nonsensical and misunderstands or misconstrues Plaintiff's allegations. Plaintiff's Complaint does not assert that Defendant, as a party to the communication, captured information, but that Defendant installed an unauthorized "pen register" on his browser which caused his IP address to be captured by *other* third parties. Because such conduct is prohibited by the Pen Register Act, Defendant's status

as an intended party to any communication is irrelevant and holds no argumentative value.

Fourth, Defendant argues that the Act does not apply to the alleged conduct because the legislative history purportedly "confirms" that it only protects dialing, routing, addressing and signaling information (or "DRAS") that is connected to person-to-person communications such as phone calls and emails. (MTD at 2.) However, numerous federal courts, including the Southern District of California, have consistently rejected Defendant's narrow reading of the statute and interpreted the plain language of the Act expansively to find that the definition of "pen register" applies to internet browser trackers such as the LiveRamp Tracker at issue here. *See e.g. Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("the [c]ourt cannot ignore the expansive language in the California Legislature's chosen definition.").

Lastly, Defendant argues that under the rule of lenity, any ambiguity in the statutory text must be resolved in its favor. (MTD at 2.) This argument fails because the rule applies "only if the court can do more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." *People v. Superior Ct. of Riverside Cnty*., 81 Cal. App. 5th 851, 886 (2022). There is no such egregious ambiguity here, nor has Defendant demonstrated as such to satisfy the rule's extraordinary burden.

Although Defendant raises the above-mentioned legal arguments in its Motion to Dismiss, it never disputes the allegations in Plaintiff's Complaint, *i.e.* that it installed LiveRamp Trackers on its Website visitors' browsers that captured and disclosed their IP addresses, conduct that is expressly prohibited by the Pen Register Act. As such, and for the reasons set forth below, Defendant's arguments must be rejected, and its Motion to Dismiss denied in its entirety.

## II. LEGAL STANDARD

A complaint must plead sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The court must accept all factual allegations pled in the complaint as true and must construe them and draw all reasonable inferences in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co*., 80 F.3d 336, 337–38 (9th Cir. 1996). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. ARGUMENT

### A. Defendant's LiveRamp Trackers Are "Pen Registers" Under CIPA.

California law prohibits the installation of a pen register without first obtaining a court order. Cal. Penal Code § 638.51. The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Greenley*, 684 F. Supp. 3d at 1050 (citing Cal. Penal Code § 638.50(b)). Defendant argues that because pen registers are "designed to collect outgoing addressing information," that the Pen Register Act categorically excludes the IP addresses of website users. (MTD at 7.) In doing so, Defendant relies on several antiquated pre-2000s cases and a single unpublished California Superior Court decision that holds zero precedential value. *See Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024WL 5184413 (Cal. Super. Ct. Oct. 2,

2024). But, as federal courts have *unanimously* rejected challenges to analogous Pen Register Act claims, Defendant's argument must similarly be rejected.[1]

To that end, the Northern District recently concluded in *Shah*, a case with a parallel fact pattern to this case, that the defendant implemented a pen register on its website in violation of the Pen Register Act. 754 F. Supp. 3d 924, 928 (N.D. Cal. 2024). *Shah* is instructive in warding off Defendant's argument that website visitors' IP addresses evade the Act's coverage. There, the defendant operated the video gaming website gamespot.com. *Id*. at 927. The plaintiff alleged that when a user visits the website, the defendant's server sends instructions to the user's browser to install trackers operated by third parties. *Id*. Once the trackers are installed, they instruct the user's browser to send the user's IP address to the third party. *Id*. Further, the trackers also store a cookie in the user's browser cache, and so long as the user has not cleared their browser cache the trackers will locate the cookie stored in the cache every time the user visits the website and cause the browser to send the cookie along with the user's IP address to a third party. *Id*. Relying on the Southern District of California's decision in *Greenly*, the court determined such allegations are sufficient to state a claim under CIPA's Pen Register Act and expressly concluded that "the IP addresses collected by the [t]rackers fall within the statutory definition of 'addressing' information." *Shah*, 754 F. Supp 3d at 929; *see also In re Zynga Litig.*, 750 F.3d 1098,

---

[1] *See e.g. Greenly,* 684 F. Supp 3d at 1050–51; *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 933 (N.D. Cal. 2024); *Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 WL 486317, at *12 (S.D. Cal. Feb. 13, 2025); *Conohan v. Rad Power Bikes Inc.*, No. 25-cv-0106 PVC, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025); *Mirmalek v. Los Angeles Time Communications LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *Lesh v. CNN, Inc.*, 767 F. Supp. 3d 33, 42 (S.D.N.Y. 2025); *Rodriguez v. Autotrader.com, Inc*., 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025); *Heiting v. FKA Distributing Co*., No. 2:24-cv-07314-HDV-AGR, 2025 WL 736594, at *3 (S.D. Cal. Feb. 3, 2025); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *12 (N.D. Cal. Jul. 14, 2025).

1108 (9th Cir. 2014) ("IP addresses constitute addressing information . . .." (internal citation omitted)). Furthermore, the *Shah* court squarely rejected Defendant's argument here that it matters whether the addressing information is coming from the recipient or sender. (*See* MTD at 6, 7); *Shah*, 754 F. Supp. 3d at 929 ("By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the [t]rackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [defendant]'s website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue").

Additionally, in *Riganian*, the court examined the same LiveRamp Tracker technology that Plaintiff alleges is installed by Defendant and determined that such technology qualifies as a pen register within the definition of CIPA. 2025 WL 2021802, at *11. Indeed, the court in *Riganian* noted that the Act was not limited just to telephone communications and that a "pen register[]" specifically includes "data collection tools" such as the LiveRamp Tracker. *Id.* (citing *Greenley*, 684 F. Supp. at 1050). Therefore, there should be no question as to whether Plaintiff sufficiently alleges Defendant's use or installation of a pen register on his browser. In his Complaint, Plaintiff plainly states that to load Defendant's Website on a user's internet browser, the browser transmits an HTTP request to Defendant's server, which in reply delivers an HTTP response with instruction to install the LiveRamp Tracker on the user's browser. (Compl., ¶¶ 17, 18.) Such LiveRamp Tracker then prompts the browser to capture identifying data, including the user's IP address back to LiveRamp. (*Id*. at ¶¶ 18, 20.) Such information reveals the user's outgoing routing, addressing, or signaling information and therefore qualifies as a pen register. *(Id*. at ¶ 20.) Accordingly, Defendant's argument that such allegations are deficient must be denied.

### B. Plaintiff Does Not Have To Allege A Communication With "Content" To State A Claim Under § 638.51.

Defendant next argues that Plaintiff must allege that he engaged in a communication with Reddit that involved "substantive content." (MTD at 7.) Defendant's argument is baseless, unsupported in California law, and Defendant cites no relevant authority interpreting the Pen Register Act in support of its position. The Pen Register Act provision of CIPA (§ 638.51) applies to different conduct than wiretapping provisions of § 631. Defendant's argument essentially asks this Court to conflate the two separate provisions to create a loophole to liability by requiring Plaintiff to allege more than what is required under the Act. Admittedly, if Plaintiff were to allege that Defendant violated § 631 of CIPA, his pleadings surely would be required to include that Defendant aided and abetted LiveRamp to capture the "contents or meaning" of his electronic communications. *See* § 631(a); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021). But Plaintiff does not plead a wiretapping claim under § 631. Plaintiff's sole cause of action in this case before this Court is for Defendant's violations of the Pen Register Act, § 638.51, which aims to hold Defendant liable for installing an unauthorized pen register on his browser. Several courts have analyzed the "electronic communication" language of the Act and have not reached Defendant's conclusion.

For example, in *Mirmalek v. Los Angeles Time Communications LLC*, the court held that the plaintiff adequately alleged that IP addresses are "transmitted by an instrument of facility from which a wire or electronic communication is transmitted." 2024 WL 5102709, at *4 (quoting the Pen Register Act). Thus, the plaintiff's allegations that users' devices "transmit 'electronic communication[s]' in the form of [HTTP] . . . requests to load [d]efendant's website[;]" that "to make [d]efendant's [w]ebsite load on a user's internet browser, the browser sends an 'HTTP' . . . request . . .to [d]efendant's server[;]" "[t]hen [d]efendant's server sends an HTTP response with

a set of instructions . . .[;]" and that "the [t]rackers 'record' the addressing information by 'instruct[ing] the user's browser to send . . . the user's IP address' to the [t]racker and by 'stor[ing] a cookie with the user's IP address in the user's browser cache[]'" were sufficient to allege that the trackers recorded addressing information. *Mirmalek*, 2024 WL 5102709, at *4. The court did not require or review the complaint for any allegations regarding the transmission of substantive content. *Id.* As the *Shah* court further held on this point, the "HTTP request transmitted from users' computers or smartphones *constitutes an electronic communication*, and the [t]rackers record the addressing information associated with this communication." *Shah*, 754 F. Supp. 3d at 931 (emphasis added); *See also Lesh*, 767 F. Supp. 3d at 40–41 (finding that the transmission of the HTTP request from the user's computer to the defendant's server meets the definition of an electronic communication). This is precisely what Plaintiff alleges occurs in his Complaint (*see supra*). And while Defendant asserts that courts have "repeatedly" held that merely opening a web page does not constitute a communication with content (MTD at 8), none of its cited cites have reach this conclusion while analyzing claims pursuant to § 638.51 of CIPA. *See Gonzales v. Uber Techs. Inc.,* 305 F. Supp. 3d 1078, 1084-86 (N.D. Cal. 2018) (dismissing *federal Wiretap Act claims* where the plaintiff did not allege that the defendant intercepted the contents of a communication); *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *6 (S.D. Cal. Jul. 18, 2024) (dismissing the plaintiff's claims pursuant to *Cal. Penal Code § 631(a)* of CIPA). Therefore Plaintiff's allegations are sufficient and in line with courts interpreting the *relevant* pen register statute, without requiring allegations of electronic communications involving substantive content.[2]

---

[2] To the extent this Court agrees with Defendant and deems Plaintiff's allegations deficient in this regard, Plaintiff asks this Court for leave to amend his Complaint to detail his *additional* electronic communications with Defendant's Website.

### C. The "Third Party Exception" Applies To Wiretapping Claims Under § 631(a) And Does Not Apply To Pen Register Act Claims.

Defendant's argument that it is not liable under the Pen Register Act because it is an intended recipient of the communication similarly lacks merit. (MTD at 9, 10.) While Defendant forwards its straw man argument that Plaintiff seeks to hold entities liable for the use of "commonplace technologies," Defendant's use of the LiveRamp Tracker is not akin to that of an entity monitoring its *own* incoming communications. (MTD at 9.) Rather, Defendant has intentionally designed its Website to compulsively download *third-party tracking technologies* on its users' browsers, technology that remains installed even after users are done interacting with Defendant's Website.[3] Furthermore, Defendant misreads Plaintiff's allegations. Plaintiff does not allege that Defendant is liable for intercepting any contents of communications in violation of CIPA's wiretapping provision which governs such conduct and contains an exemption from liability for a person who is a party to that communication. *See Heiting*, 2025 WL 736594, at *3 (quoting *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 ... has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.") Rather, Plaintiff alleges that Defendant is liable under the Act for installing a pen register on his browser without first obtaining his consent or court order. (Compl., ¶¶ 18, 20, 33, 34, 36, 37; Cal. Penal Code §§ 638.51.) In other words, the Act makes actionable the unauthorized installation or use of a pen register, which is precisely what Plaintiff has asserted in this case.[4]

---

[3] Plaintiff reiterates that in *Riganian*, the court determined that the LiveRamp Tracker is a pen register within the definition of CIPA.

[4] Defendant also argues that his Pen Register Act claim fails because the Act does not authorize aiding and abetting claims. (MTD at 10.) Defendant again misunderstands the relevant law as well as Plaintiff's allegations. Plaintiff alleges that Defendant is liable for installing a pen register on his browser without authorization or court order. This does not amount to an aiding or abetting claim because Defendant is responsible for integrating the third-party script into its own website. *See e.g. Shah*, 754 F. Supp.

Tellingly, Defendant does not cite any case law applying the third-party exception to the Pen Register Act but instead asks this court to follow the District of Minnesota's antiquated decision dismissing a federal claim in the context of a motion to suppress evidence. *See Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-cv-1497, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009).[5] This Court does not need to look to dated, out of state, and out of circuit decisions to locate instructive authority on this issue as the Southern District of California as well as other federal district courts within the Ninth Circuit have routinely upheld Pen Register Act claims where the defendant is an intended party to a communication. *See e.g. Gabrielli*, 2025 WL 1939957, at *12; *Zarif*, 2025 WL 486317, at *11–12; *Heiting*, 2025 WL 736594, at *3; *Rodriguez*, 762 F. Supp. 3d at 930; *Mirmalek*, 2024 WL 5102709, at *3-4; *Shah*, 754 F. Supp. 3d at 933; *Moody v. C2 Educational Systems Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024). This Court should hold no differently.

**D. The Pen Register Act Unequivocally Covers The Conduct At Issue.**

Defendant's long-winded, 11-page scattershot argument about why the Pen Register Act does not apply to the conduct at issue completely ignores the simple truth that courts have consistently applied the Pen Register Act to exactly the type of tracking technology utilized by Defendant. Defendant talks at length providing the Court with its own illogical interpretation of the statute's unambiguous language but expectedly provides no relevant authority to support its interpretation. Specifically, Defendant argues that: 1) the Act's language does not apply to the conduct at issue because the court should conflate § 631 with § 638.51 to require Plaintiff to allege his electronic communications should include substantive contents; 2) the reference to "telephones"

---

3d at 931.

[5] Defendant also cites *Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis.*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996) and *S. Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 777–78 (S.C. 1991), neither out of state decision from the 1990s is persuasive nor relevant to the technology before the Court in this case.

in the Act means the California Legislature intended the statute to be narrowly interpreted; 3) the enumerated exceptions of the Act support its interpretation that the Act's application should not reach websites; 4) the legislative history of the Act confirms that it was designed to protect only person-to-person communications and not websites; 5) the CCPA should govern the conduct at issue because unpassed legislation would amend the Act; and 6) applying the Act to websites would lead to absurd results. None of Defendant's arguments are persuasive for the simple reason that courts do not agree with its interpretation of the Act, while also upholding claims analogous to Plaintiff's.

Luckily, the California federal circuit has made the analysis for this Court straightforward. Taking it step by step, pursuant to § 638.51(a), "a person may not install or use a pen register . . . without first obtaining a court order." Defendant has not asserted that it obtained a court order, nor has it contested that it installed the LiveRamp Tracker on Plaintiff's browser, thus, the only remaining question for this Court is whether the LiveRamp Tracker is a pen register. As noted above, the court in *Riganian* already determined that the technology at issue is a pen register within the meaning of the Act. *See Riganian*, 2025 WL 2021802, at *11–12. But to be sure, a pen register is a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). This definition invites a three-step inquiry: 1) is the LiveRamp Tracker a device or process; 2) did it record Plaintiff's DRAS information; and 3) was Plaintiff's DRAS information transmitted by an instrument or facility from which a wire or electronic communication is transmitted? If the preceding questions are answered affirmatively, this Court must uphold Plaintiff's claims.

First, the LiveRamp Tracker is a device or process. As the court noted in *Greenly*, "[t]he [pen register] definition is specific as to the type of data a pen register

collects – 'dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted,' but it is vague and inclusive as to the form of the collection tool – 'a device or process.' This indicates courts should focus less on the form of the data collector and more on the result." *Shah*, 754 F. Supp. 3d at 928 (quoting *Greenly*, 684 F. Supp. 3d at 1050). As Plaintiff alleges "the LiveRamp Tracker qualifies as a 'process' because it functions as software that identifies consumers, gathers data, and correlates that data to enable targeted adverting. (Compl., ¶ 29.) Plaintiff further alleges that "the LiveRamp Tracker qualifies as a 'device' because in order for the software to work, it must run on some kind of computing device." (*Id*. at ¶ 30.) As the Southern Distrct of California held in *Greenly*, such allegations are sufficient at the motion to dismiss stage to plausibly allege that the LiveRamp Tracker operates as a "process" within the meaning of the statute. *See Greenly*, 684 F. Supp. 3d at 1050 ("A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting[]'"); *see also Shah*, 754 F. Supp. 3d at 928. Other courts have held that Plaintiff's allegations are sufficient to allege the LiveRamp Tracker is a device. *See Mirmalek*, 2024 WL 5102709, at *3 (quoting *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 958 (N.D. Cal. 2023) (holding that software can constitute a device). Therefore, the LiveRamp Tracker is a "device or process" under the Act.

Second, the LiveRamp Tracker recorded Plaintiff's DRAS information by capturing his IP address. As the Ninth Circuit held, "IP addresses constitute addressing information . . ." *In re Zynga Priv. Litig*., 750 F.3d at 1108; *see also Mirmalek*, 2024 WL 5102709, at *4 ("[p]laintiff sufficiently alleges that the [t]rackers record addressing information in the form of IP addresses"); *Shah*, 754 F. Supp. 3d at 929 (same). Therefore, it is undisputed that when the LiveRamp Tracker captured Plaintiff's IP address it captured his "addressing information" within the meaning of the Act. (Compl., ¶¶ 40-42.)

Third, Plaintiff's DRAS information was "transmitted by an instrument or facility from which a wire or electronic communication is transmitted." Cal. Penal Code § 638.50. For purposes of the statute, the "instrument or facility" from which the electronic communication is transmitted is Plaintiff's computer. (Compl., ¶ 39) (alleging that Plaintiff visited Defendant's Website from his desktop browser); *Shah*, 754 F. Supp. 3d 928 (stating the instrument or facility is the user's "computer or smartphone"); *Mirmalek*, 2024 WL 5102709, at *4 (same). And the "electronic communication" that Plaintiff's computer transmits is the HTTP request to load Defendant's Website, sent from his browser to Defendant's Website. (Compl., ¶¶ 17, 25); *Shah*, 754 F. Supp. 3d at 931 (the "HTTP request transmitted from users' computers or smartphones *constitutes an electronic communication*, and the [t]rackers record the addressing information associated with this communication") (emphasis added). Such request is responded to with instructions to install the LiveRamp Tracker, and the LiveRamp Tracker prompts the browser to send Plaintiff's IP address. (Compl., ¶¶ 18, 25.) These facts adequately allege the transmission of an electronic communication. *See e.g.s. Shah*, 754 F. Supp. 3d at 928-29; *Mirmalek*, 2024 WL 5102709, at *4, *Lesh*, 767 F. Supp. 3d at 40-41.

Thus, Plaintiff has plainly alleged a violation of the Pen Register Act, and the Court need not consider Defendant's linguistic contentions and analysis of the legislative history. *See Riganian*, 2024 WL 2021802, at *12 (the [c]ourt respectfully disagrees with the California Superior Court's conclusion in *Sanchez* [*v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025)], which focused its analysis on the legislative history of the CIPA rather than on the expansive plain language of [§] 638.50"); *see* MTD at 17, relying on *Sanchez*, 2025 WL 487194, at *3). In fact, rejecting Defendant's attempt to narrow CIPA's application and "[g]iving effect to CIPA's broad statutory language is consistent with the California Legislature's stated intent to protect privacy interests, as well as the California courts' approach when

applying statutes to new technologies." *Shah*, 754 F. Supp. 3d at 930; *see also* Cal. Penal Code § 630 ("[t]he Legislature by this chapter intends to protect the right of privacy of the people of this state"). Put eloquently in *Shah*:

> In light of this intent, the California Supreme Court has instructed courts to interpret CIPA in the manner that 'fulfills the legislative purpose of CIPA by giving greater protection to privacy interests.'" *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (quoting *Flanagan v. Flanagan*, 27 Cal.4th 766, 117 Cal.Rptr.2d 574, 41 P.3d 575, 581 (2002)). Moreover, California courts do not read California statutes as limiting themselves to the traditional technologies or models in place at the time the statutes were enacted. "The California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, No. 13-MD-02430, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). As such, courts have repeatedly held that other provisions of CIPA are not limited to the traditional versions of the tools at issue, based on "the plain language of the statute," "the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA to protect privacy," and "the California courts' approach to updating obsolete statutes in light of emerging technologies." *Id.* (applying Section 631 of CIPA to emails); *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications."). The same reasoning applies here.

*Shah*, 754 F. Supp. 3d at 930–31. And while Defendant further contests that reading the Act so broadly would produce absurd and unintended consequences (MTD at 19, 20), the Act is intentionally written broadly, and it is this Court's task to interpret the law as the Legislature wrote it. *Id* at 933. Such interpretation requires this Court to reflect the Legislature's judgment that "an individual's consent is required before others may track certain addressing information in their electronic communications for non-law enforcement purposes." *Id.* And to the extent that Defendant believes the Pen

Register Act's scope should be narrowed, such question "ultimately rests with the Legislature, not the courts." *Shah*, 754 F. Supp. 3d at 933.[6]

Furthermore, Defendant's contention that Plaintiff's application of the Pen Register Act is in conflict with the California Consumer Privacy Act (the "CCPA") is incorrect. (MTD at 17, 18.) The CCPA states that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." Cal. Civ. Code § 1798.175. And further provides that "in the event of a conflict between other laws and the provisions of the [CCPA], the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id*. Therefore, while the CCPA and CIPA are intended to compliment one another, if a conflict existed, CIPA's greater privacy protections would control. Thus, Defendant's argument is self-defeating. *See Mirmalek*, 2024 WL 5102709, at *5 ("as CCPA states, 'the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control.' Cal. Civ. Code § 1798.175. Thus, by [d]efendant's own argument, CIPA should control").

Finally, Defendant's rule of lenity argument fails because the rule applies "only if the courts can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." *Superior Ct.*

---

[6] Defendant points out that "pending legislation" in California Senate Bill 690 would amend the Pen Register Act, and has taken a position that such amendment would preclude Plaintiff's claims. (MTD at 18, 19.) However, Defendant fails to point out that the most recent amendment on May 29, 2025 removed language allowing any retroactive application of the would-be law, removing any possibility that the amendment would impact Plaintiff's claims. *See* https://legiscan.com/CA/text/SB690/id/3248179. Furthermore, Defendant's attempt to predict what the law could be in the future is not persuasive and this Court should base its analysis on what the law currently *is*, similar to other courts continuing to uphold Pen Register Act claims in the wake of the Bill's initial proposed amendment on March 24, 2025. *See e.g. In re Meta Pixel Tax Filing Cases*, No. 22-cv-07557-PCP, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025); *Riganian*, 2025 WL 2021802; *Gabrielli*, 2025 WL 1939957; *Conohan*, 2025 WL 1111246.

*of Riverside*, 81 Cal. App. 5th at 888. The "rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute.'" *Riganian*, 2025 WL 2021802, at *12 (quoting *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998))). There is no such egregious ambiguity here, nor has it previously been found. *See Riganian*, 2025 WL 2021802, *12.

Thus, this Court should deny Defendant's Motion to Dismiss as courts in analogous situations unanimously do. *See Gabrielli*, 2025 WL 1939957, at *12; *Zarif*, 2025 WL 486317, at *11–12; *Heiting*, 2025 WL 736594, at *3; *Rodriguez*, 762 F. Supp. 3d at 930; *Mirmalek*, 2024 WL 5102709, at *3-4; *Shah*, 754 F. Supp. 3d at 933; *Moody*, 742 F. Supp. 3d at 1076.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017).

Dated: August 13, 2025

Respectfully Submitted,

By: /s/ *Eugene Y. Turin*
Eugene Y. Turin

**McGuire Law, P.C.**
Eugene Y. Turin (State Bar No. 342413)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com

*Counsel for Plaintiff and the Proposed Class*